IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) | CIVIL NO. 13-00486 SOM-KSC |
| | ) | ORDER DENYING MOTION TO |
| Plaintiff, | ) | DISMISS |
| | ) | |
| vs. | ) | |
| | ) | |
| TROY LYNDON, and RONALD ZAUCHA, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING MOTION TO DISMISS**

I.          **INTRODUCTION.**

          Defendant Ronald Zaucha moves to dismiss the Complaint

of September 24, 2013, arguing that the court lacks personal

jurisdiction over him, that venue is improper, that the Complaint

fails to state claims on which relief can be granted, and that

the Complaint's allegations of fraud are not pled with sufficient

particularity.  The court rejects each of these arguments and

denies the motion.

II.          **FACTUAL BACKGROUND.**

          This Factual Background section is based on the

allegations contained in the Complaint of September 24, 2013.

See Complaint, ECF No. 1.  The facts stated in this section are

not meant to be findings of fact, but only a description of the

facts alleged in the Complaint.

Troy Lyndon is the founder, chief executive officer, chief financial officer, and chairman of the board of Left Behind Games, Inc. <u>See</u> Complaint ¶¶ 3 and 13, ECF No. 1, PageID #s 2 and 4. Lyndon resides in Hawaii and has filed a Chapter 7 bankruptcy in the District of Hawaii. <u>Id.</u> ¶ 13, PageID # 4.

Left Behind was incorporated in Delaware in 2002 and reincorporated in Nevada in 2011. Its corporate status has been revoked in Nevada and forfeited in Delaware. <u>Id.</u> ¶ 15, PageID # 4-5. Left Behind became a public company in 2006. <u>Id.</u> Its stock was registered with the Securities and Exchange Commission and traded on the OTCQB exchange under the ticker symbol "LFBG." <u>Id.</u> ¶ 17, PageID # 5. Left Behind terminated all of its employees at the end of 2011. <u>Id.</u> ¶ 18, PageID # 5.

Ronald Zaucha, a pastor, is Lyndon's close friend and has been a consultant for Left Behind Games since 2008. Zaucha also owns a company called Lighthouse Distributors, Inc. <u>See</u> Complaint ¶¶ 3 and 14, ECF No. 1, PageID # 2 and 4. Lighthouse was purportedly a distributor of video games, including Left Behind's games. Lyndon and Zaucha had a Lighthouse employee sign the distributor agreement memorializing that relationship on behalf of Lighthouse, meaning that Zaucha's name was not mentioned in the agreement. Although the agreement called for Left Behind to sell and ship its video games to Lighthouse, Lighthouse and Left Behind were located in the same building.

Id. ¶ 58 and 60, PageID # 14-15.  Lighthouse ceased operations in 2012, shortly after Left Behind ceased operations.  Id. ¶ 19, PageID # 5.

Beginning in 2009, Left Behind issued Zaucha approximately 1.7 billion shares of its common stock, in exchange for Zaucha's consulting services.  Id. ¶¶ 3-4, 23-27, 37, PageID #s 2, 6-8, 9-10.  The consulting agreements between Left Behind and Zaucha did not specify his job duties, referring instead to the provision of marketing and business services.  Id. ¶ 28, PageID # 8.  Zaucha may have authored a script used by Left Behind staff who called pastors from a free database maintained by another entity.  Id. ¶ 32, PageID #s 8-9.  Zaucha allegedly ran staff meetings and provided informal counseling to employees, rather than consultation services concerning marketing and business, as contemplated by the consultation agreements.  Id.

While Zaucha was a Left Behind consultant, Left Behind was unprofitable and severely undercapitalized.  Id. ¶ 4, PageID # 2.  The Complaint alleges that the consulting agreements between Zaucha and Left Behind were a "sham," whose true purpose was to enable Zaucha to sell millions of unregistered shares of Left Behind common stock, kicking back stock proceeds to Left Behind, which was in need of funds.  Id. ¶ 36, PageID # 9.  In other words, although Zaucha allegedly provided few services to Left Behind, he received shares of Left Behind that he sold,

thereafter "kicking back" some of the proceeds to Left Behind.
Id. ¶ 55, PageID # 13.

According to the Complaint, at Lyndon's direction,
Zaucha "sold virtually all of this [Left Behind] stock, reaping
approximately $4.6 million in sales proceeds.  Zaucha then kicked
back approximately $3.3 million of these proceeds to the company
in three ways."  Id. ¶ 4, PageID # 2.  First, Zaucha paid Left
Behind $871,169 in "early-sell fees."  Id. ¶¶ 5 and 97, PageID
#s 2 and 24.  Second, Zaucha's company, Lighthouse, purchased
about $1.3 million of Left Behind's old inventory.  Although
Lighthouse was supposedly a distributor of video games, it sold
only a fraction of this inventory for a few thousand dollars.  It
instead gave most of it away, suggesting that the money allegedly
paid for the inventory was truly for a different purpose.  Id.
¶¶ 6 and 67-68, PageID # 2-3, and 15-16.  Finally, Zaucha also
"kicked back" about $1 million to Left Behind in the form of
"loans" and "investments."  Id. ¶¶ 8 and 97, PageID #s 3 and 24.

Zaucha allegedly kept $1.28 million from the stock
sales of Left Behind, using that money to pay his living
expenses, to fund Lighthouse's operations, and to purchase
property in Hawaii and California.  Id. ¶ 9, 97(d), PageID #s 3
and 24.

The Complaint alleges:

As a result of the purported sales to
Lighthouse, [Left Behind's] revenues were

4

> materially overstated in its quarterly
> reports on Form 10-Q filed with the SEC for
> the second and third quarters of fiscal year
> 2011, and in its annual report on Form 10-K
> filed with the SEC for its fiscal year 2011
> (which ended March 31, 2011). [Left Behind's]
> quarterly and annual reports were also
> misleading because they did not disclose that
> its transactions with Zaucha were related
> party transactions.  Nor did they disclose
> the sham, round-trip nature of the
> transactions, where [Left Behind] essentially
> paid for its own revenue by paying Zaucha in
> stock and then having most of his stock sale
> proceeds used to purchase [Left Behind]
> product through Zaucha's company, Lighthouse.

Id. ¶ 7, PageID # 3; see also id. ¶ 63, PageID # 15 (alleging

that Left Behind's Form 10-K indicated that its 2011 revenues

increased $1,485,044 over the previous year as a result of

Lighthouse's alleged purchases), ¶ 68 (alleging that Lighthouse

gave away most of the Left Behind product and that Left Behind

failed to disclose this in its financial statements and Forms 10-

Q, 10-Q/A, and 10-K), and ¶¶ 82, 85, and 93-94 (alleging that

Left Behind filed Forms 10-Q, 10-Q/A, and 10-K with false and

misleading revenue statements as a result of the "sham

transactions using the proceeds of the sale of Zaucha's stock").

The Complaint further alleges that Zaucha knew that,

under SEC Rule 144, 17 C.F.R. § 230.144, the common stock he

received could not be sold within a six-month period.  Id. ¶ 40,

PageID # 10.  Allegedly to get around this restriction, Lyndon

sent faxes to Left Behind's stock transfer agent, asking that

"New Restricted Stock Certificates" be issued to Zaucha with the

following instruction, "Note, hold for 144 paperwork to remove
legend."  The faxes also backdated the beneficial ownership date
of the stock six months.  Id. ¶ 42, PageID # 10.

The reference to "144 paperwork to remove legend" was a
reference to multiple opinion letters from Left Behind's
attorney.  In issuing the opinion letters, the attorney relied on
Zaucha's "Seller's Representation Letter" for a "non-affiliate,"
which stated:

> Neither the undersigned, nor any person or
> entity listed below, presently is, or in the
> prior three months has been, an "Affiliate["]
> of the Company as that term is used in
> paragraph (a) or Rule 144 (i.e., a person or
> entity that directly, or indirectly through
> one or more intermediaries, controls or is
> controlled by, or is under common control
> with, the Company).

Id. ¶¶ 43, 45, PageID #s 10-11.  Zaucha further represented that
his stock "has been owned and fully paid for . . . in excess of
one (1) year."  Id. ¶ 44, PageID # 11.  Zaucha's representations
were allegedly false, in that he was an "affiliate" of Left
Behind who was allegedly controlled by Lyndon.  Id. ¶ 46, PageID
# 11.

From November 2009 until June 2011, based on Zaucha's
representations, Left Behind's attorney issued more than 20
opinion letters addressed to Left Behind's transfer agent that
"opined" that Zaucha's shares of Left Behind could be sold by

Zaucha without registering them with the SEC in accordance with Rule 144. Id. ¶ 45, PageID # 11.

Based on these opinion letters, Left Behind's transfer agent removed the restrictive legends from the common stock and sent the stock to Zaucha's brokerage accounts, from which Zaucha offered and sold the shares into the market. See id. ¶ 47, PageID # 11. Paragraph 48 of the Complaint alleges that, between August 4, 2009, and October 10, 2011, Zaucha had accounts at six different brokerage firms from which he sold a total of more than 1.7 billion unregistered shares of Left Behind for more than $4.6 million. Id. ¶ 46, PageID # 12. Lyndon supposedly instructed Zaucha as to the price at which to sell the stock, as well as to how the proceeds would be split, including a "kick back" of $871,169 to Left Behind as an "early sell fee." Id. ¶ 49-50, PageID # 12-13.

Left Behind's financial statements for the year ending March 31, 2011, were audited. Id. ¶ 70, PageID # 16. The auditor discovered Zaucha's relationship with Lighthouse and was concerned that Zaucha may have been using the proceeds from his sale of Left Behind stock to purchase Left Behind product in what was a "circle of cash." Id. ¶ 72, PageID # 16. The Complaint alleges that, on or about July 29, 2011, Zaucha sent the auditors a letter in which he knowingly or recklessly made various misrepresentations, such as that (1) the sale/purchase of video

7

games between Left Behind and Lighthouse involved "real transactions"; (2) the transactions were in no way connected with his consulting agreement with Left Behind; (3) there were no side agreements concerning the consulting and distribution agreements; and (4) the decision to invest proceeds from Zaucha's sale of Left Behind stock was independent from the sale of that stock. Id. ¶¶ 72-74, PageID # 16-17.

Zaucha and Lyndon are named as Defendants in the Complaint's First claim for Relief (violation of sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) and 77e(c)), Second Claim for Relief (violation of section 17(a) of the Securities Act, 15 U.S.C. § 77q(a)), and the Third Claim for Relief (violation of section 10(b) of the Exchange Act and Rule 10b-5 thereunder, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5). Lyndon is named as a Defendant in other causes of action alleged in the Complaint.

III.     ANALYSIS.

A.   The Court Has Personal Jurisdiction Over Zaucha.

Zaucha contends that this court lacks personal jurisdiction over him under the principles set forth in International Shoe Company v. Washington, 326 U.S. 310 (1945), and its progeny. He specifically argues that he lacks ties to Hawaii sufficient for the court to exercise general or specific jurisdiction over him. In an analogous situation, the Ninth

Circuit Court of Appeals rejected this argument.  See Securities

Investor Protection Corp. v. Vigman, 764 F.2d 1309 (9ᵗʰ Cir.

1985).

In Vigman, the district court dismissed a defendant,

reasoning that it lacked personal jurisdiction over the claims

asserted against the defendant under section 10(b) of the

Security Exchange Act of 1934 and Rule 10b-5 thereunder.  Id. at

1312.  The Ninth Circuit reversed.  Examining International Shoe

and its progeny, the Ninth Circuit noted that those cases

generally deal with a court's jurisdiction over a nonresident

defendant through a state's long-arm statute.  Thus, when a

federal district court exercises diversity jurisdiction, the Due

Process Clause requires that the defendant have contacts, ties,

or relations with the forum state sufficient to confer personal

jurisdiction over the defendant.  Id. at 1315.  However, in a

case in which the court exercises jurisdiction based on federal

question jurisdiction, as opposed to diversity jurisdiction,

minimum contacts with a state do not play the same limiting role.

Id.  The Ninth Circuit stated that, when a federal statute

confers nationwide service of process, the issue for due process

purposes is whether the party has sufficient contacts with the

United States, not any particular state.  Id. at 1315-16.

Section 27 of the Security Exchange Act of 1934, 15

U.S.C. § 78aa, provides:

> Any suit or action to enforce liability or
> duty created by this chapter [, Title 15,
> Chapter 2B (Security Exchanges),] or rules
> and regulations thereunder, or to enjoin any
> violation of such chapter or rules and
> regulations, may be brought in any such
> district or in the district wherein the
> defendant is found or is an inhabitant or
> transacts business, and process in such cases
> may be served in any other district of which
> the defendant is an inhabitant or wherever
> the defendant may be found.

15 U.S.C. § 78aa. Vigman determined that the statute authorized nationwide service of process. Id. at 1315. The Ninth Circuit therefore held that personal jurisdiction over the defendant in Vigman could be asserted if the defendant had minimum contacts with the United States. Id. at 1316.

As in Vigman, the Complaint in this matter asserts a violation of section 10(b) of the Exchange Act and Rule 10b-5 thereunder. See Complaint, Third Claim for Relief. Under Vigman, this court may exercise personal jurisdiction over that claim if Zaucha has minimum contacts with the United States. Zaucha's motion notes that he is a resident and domiciliary of California. See ECF No. 97, PageID #s 1085, 1087, and 1089. Zaucha also owns an investment condominium in Hawaii. Id., PageID # 1087. Zaucha appears to have had a Hawaii driver license issued to him on November 16, 2011. See ECF No. 119-1, PageID # 1406. Zaucha also notes that "most of the acts ple[d] in the SEC's complaint are alleged to have occurred in California." Id., PageID # 1092. Given his contacts with

10

California and Hawaii, Zaucha unquestionably has minimum contacts with the United States such that this court may exercise personal jurisdiction over the claims against him based on section 10(b) of the Exchange Act and Rule 10b-5.

Having established that this court has personal jurisdiction over Zaucha with respect to the Third Cause of Action, this court must still determine whether it has personal jurisdiction over him with respect to the other two claims asserted against him.  See Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004) ("Personal jurisdiction must exist for each claim asserted against a defendant.").  This court determines that it does.

The Complaint also asserts claims against Zaucha under sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) and 77e(c) (First claim for Relief), and section 17(a) of the Securities Act, 15 U.S.C. § 77q(a) (Second Claim for Relief). These statutes are not located within Title 15, Chapter 2B, which would direct the court to 15 U.S.C. § 78aa to determine whether nationwide service of process is allowed for the claims. Instead, the alleged violations are part of Title 15, Chapter 2A, subchapter 1, 15 U.S.C. §§ 77a to 77aa.  The court therefore looks to 15 U.S.C. § 77v to determine whether nationwide service of process is authorized for these claims.

In relevant part, that section gives the district courts of the United States "jurisdiction of offenses and violations under this subchapter [, Title 15, Chapter 2A, subchapter 1, 15 U.S.C. §§ 77a to 77aa,] and under the rules and regulations promulgated by the Commission in respect thereto." 15 U.S.C. § 77v(a).  That section also provides, "Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."  Id.

Given § 77v(a)'s allowance of service of process "in any other district of which the defendant is an inhabitant or wherever the defendant may be found," this court concludes that, like § 78aa, § 77v(a) also allows for nationwide service of process.  Accordingly, Vigman is instructive on whether this court has personal jurisdiction over Zaucha with respect to the claims under 15 U.S.C. § 77e(a) and 77e(c) and 15 U.S.C. § 77q(a).  For the reasons set forth above, the court determines that it has personal jurisdiction over Zaucha with respect to these claims, as Zaucha unquestionably has minimum contacts with the United States such that this court has an independent basis for personal jurisdiction with respect to the claims.

The court notes that, even if such an independent basis for personal jurisdiction with respect to the claims asserted in the First and Second Claims for Relief was lacking, the court would exercise pendent personal jurisdiction over the claims, as they arise under a nucleus of operative facts that is common to the Third Claim for Relief.  See Action Embroidery Corp., 368 F.3d at 1180-81.

### B.    Venue is Proper in This District.

Zaucha argues that, under 28 U.S.C. § 1406(a), venue is improper in this district.  This court disagrees.

In Vigman, the court not only examined personal jurisdiction under 15 U.S.C § 78aa for alleged violations of section 10(b) of the Exchange Act and Rule 10b-5 thereunder, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5, it also looked at the issue of venue for such claims.  Vigman adopted the "co-conspirator" theory of venue for violations of securities statutes, which states:

> where an action is brought against multiple
> defendants alleging a common scheme of acts
> or transactions in violation of securities
> statutes, so long as venue is established for
> any of the defendants in the forum district,
> venue is proper as to all defendants.  This
> is true even in the absence of any contact by
> some of the defendants in the forum district.

Vigman, 764 F.2d at 1317.  Vigman did not limit its holding to cases in which venue was asserted under § 78aa, as it agreed with other courts that had applied the coconspirator theory of venue

under other securities statutes, including under 15 U.S.C. § 77a.
See id. at 1318 (citing with approval SEC v. Nat'l Student
Marketing Corp., 360 F. Supp. 284 (D.D.C. 1973)).

Under 15 U.S.C. § 78aa, a suit alleging a violation of
section 10(b) of the Exchange Act and Rule 10b-5 thereunder, 15
U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5, "may be brought . . .
in the district wherein the defendant is found or is an
inhabitant or transacts business."  Under 15 U.S.C. § 77v(a), a
suit alleging a violation of sections 5(a) and 5(c) of the
Securities Act, 15 U.S.C. § 77e(a) and 77e(c)), or of section
17(a) of the Securities Act, 15 U.S.C. § 77q(a), similarly "may
be brought in the district wherein the defendant is found or is
an inhabitant or transacts business, or in the district where the
offer or sale took place, if the defendant participated therein."
Although there is a dispute as to whether Zaucha is really a
resident of California as he claims, or a resident of Hawaii
based on the Hawaii driver's license issued to him in November
2011, there is no dispute that Lyndon lives in Hawaii.  Lyndon
allegedly violated the same statutes as Zaucha through the same
scheme.  Accordingly, under the coconspirator theory of venue,
venue with respect to the claims against Zaucha is also proper
here, as venue is proper with respect to Lyndon.

**C.  The Court Declines to Transfer the Case to
     California.**

Zaucha argues that, under 28 U.S.C. § 1404(a), this
case should be transferred to California based on the convenience
of the witnesses and the parties.  The court declines to transfer
this case at this time.

In 28 U.S.C. § 1404(a), Congress codified the common
law doctrine of <u>forum non conveniens</u>.  The statute says, "For the
convenience of parties and witnesses, in the interest of justice,
a district court may transfer any civil action to any other
district or division where it might have been brought or to any
district or division to which all parties have consented."

Rather than requiring dismissal, a district court may,
pursuant to § 1404(a), transfer any civil action to any other
district or division where it might have been brought if it is in
the interests of justice and convenient for the parties and
witnesses.  <u>See</u> <u>Lung v. Yachts Int'l, Ltd.</u>, 980 F. Supp. 1362,
1370 (D. Haw.1997).  The purpose of § 1404(a) is to prevent the
waste of time, energy, and money and to protect litigants,
witnesses, and the public against unnecessary inconvenience and
expense.  <u>Id.</u> at 1369 (citing <u>Van Dusen v. Barrack</u>, 376 U.S. 612,
616 (1964)).

A motion to transfer venue under § 1404(a) requires
this court to weigh multiple factors to determine whether
transfer is appropriate.  These factors may include: (1) the

location where the relevant agreements were negotiated and
executed, (2) the state that is most familiar with the governing
law, (3) the plaintiff's choice of forum, (4) the respective
parties' contacts with the forum, (5) the contacts relating to
the plaintiff's cause of action in the chosen forum, (6) the
differences in the costs of litigation in the two forums, (7) the
availability of compulsory process to compel attendance of
unwilling nonparty witnesses, and (8) the ease of access to
sources of proof.  See Jones v. GNC Franchising, Inc., 211 F.3d
495, 498-99 (9th Cir. 2000).

At this time, the convenience of the parties does not
weigh in favor or transferring this matter to California.
Although Zaucha claims to be a resident of California, the other
Defendant in this case is a resident of Hawaii and the SEC chose
to litigate this matter in Hawaii.  Because Lyndon, the other
Defendant in this case, is still challenging the consent judgment
in this case, the court cannot say with certainty that it would
be more convenient for the parties to litigate this matter in
California.

Nor does the convenience of the witnesses weigh in
favor of a transfer.  The record does not indicate who the
witnesses at trial will be.  Thus, although Zaucha says he
expects to call witness from outside of Hawaii, the court cannot
tell whether there will also be witnesses from Hawaii.  Nor can

the court tell what kind of travel these witnesses will have to undertake to testify at trial.

Finally, there has been no demonstration that the interests of justice require a transfer of this matter to California. At this stage in the case, the court cannot tell who will be testifying, where the evidence is located, whether this court could compel any particular witness to testify, and what the difference in cost would be between litigating this matter in this district versus in California. Simply put, under the circumstances presented here, there is presently insufficient support for a transfer under § 1404(a).

> **D. The Complaint Properly Pleads Viable Claims With Respect to Zaucha.**

Zaucha also seeks dismissal of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the claims asserted against him fail to plead facts on which relief can be granted and fail to plead fraud with particularity. The court disagrees.

Under Rule 12(b)(6), a court reviewing claims for sufficiency of pleading is generally limited to the contents of a complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir.

1997); <u>Anderson v. Angelone</u>, 86 F.3d 932, 934 (9th Cir. 1996). However, courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment." <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003). Documents whose contents are alleged in a complaint and whose authenticity is not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss. <u>See Branch v. Tunnell</u>, 14 F.3d 449, 453-54 (9th Cir. 1994).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. <u>Sprewell</u>, 266 F.3d at 988; <u>Syntex Corp. Sec. Litig.</u>, 95 F.3d 922, 926 (9th Cir. 1996). Additionally, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. <u>Sprewell</u>, 266 F.3d at 988.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts

under a cognizable legal theory.  <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988) (citing <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir. 1984)).

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted); <u>accord</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555.  The complaint must "state a claim to relief that is plausible on its face." <u>Id.</u> at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 677.

In the court's usual prehearing inclinations, <u>see</u> ECF No. 124, the court asked Zaucha to come to the hearing prepared to specifically identify what element of any claim asserted against him was not sufficiently pled in the Complaint, as the court was concerned that Zaucha had based his motion to dismiss on general assertions of insufficient pleading. Rather than identify any such deficiency at the hearing, Zaucha rested on his papers. The court therefore deems Zaucha to have waived any argument that the Complaint is deficient in any way not identified in his motion to dismiss. That motion is unpersuasive, and the court denies it.

1. **The First Claim for Relief Properly Pleads a Claim that Zaucha Offered for Sale and Sold Unregistered Securities in Violation of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).**

The Complaint's First Claim for Relief asserts violations of sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) and 77e(c), which state:

> (a) Sale or delivery after sale of unregistered securities
>
> Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly--
>
> (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

. . . .

(c) Necessity of filing registration statement

It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title.

In Securities & Exchange Commission v. Phan, 500 F.3d 895, 902 (9th Cir. 2007), the Ninth Circuit quoted Berckeley Investment Group v. Colkitt, 455 F.3d 195, 212 (3d Cir. 2006), for its statement that, to establish a violation under 15 U.S.C. § 77e(a) and 77e(c), a plaintiff "must point to evidence that: (1) no registration statement was in effect as to the securities; (2) [defendant] sold or offered to sell the securities; and (3) the sale or offer was made through interstate commerce." As used in 15 U.S.C. §§ 77e(a) and 77e(c), "security" means "any . . . stock." 15 U.S.C. § 77b(a)(1).

Paragraph 48 of the Complaint alleges that, between August 4, 2009, and October 10, 2011, Zaucha had accounts at six different brokerage firms and that he sold more than 1.7 billion unregistered shares of Left Behind stock into the market via these brokerage firms for more than $4.6 million.  Id. ¶ 48, PageID # 12.  The Complaint therefore alleges that Zaucha offered for sale and actually sold unregistered stock of Left Behind through interstate commerce.  It is simply not the case that the Complaint contains "nothing more than a bare bones, formulaic recitation of legal conclusions."  See ECF No. 97, PageID # 1074.

To the extent Zaucha argues that the Complaint should be dismissed because Zaucha relied on attorneys' opinions as to whether his transactions were exempt from the registration requirements, that is not an argument that is properly brought on the present motion to dismiss, as it is based on facts beyond those alleged in the Complaint.  It is also incorrect.  The Ninth Circuit has stated, "Because Section 5 [, 15 U.S.C. 77e,] is a strict liability statute, it appears that the district court erred in determining that good faith reliance on counsel could preclude liability under the statute."  SEC v. CMKM Diamonds, Inc., 729 F.3d 1248, 1257 n.6 (9th Cir. 2013).  The court notes, in any event, that the Complaint alleges that Zaucha procured the attorneys' opinions by knowingly providing them with false information.  See Complaint ¶¶ 43-46, PageID #s 10-11.

**2. The Second and Third Claims for Relief Properly Plead Fraudulent Conduct or Practices in Connection With the Offer or Sale of Securities in Violation of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a) and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5.**

The Complaint's Second Claim for Relief asserts a violation of section 17(a) of the Securities Act, 15 U.S.C. § 77q(a). That section states:

(a) Use of interstate commerce for purpose of fraud or deceit

It shall be unlawful for any person in the offer or sale of any securities (including security-based swaps) or any security-based swap agreement (as defined in section 78c(a)(78) of this title) by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

The Complaint's Third Claim for Relief asserts a violation of section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), which makes it unlawful for any person by means of

interstate commerce "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . . ."

The Complaint's Third Claim for Relief also asserts a violation of Rule 10b-5, 17 C.F.R. § 240.10b-5, which makes it unlawful

> for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

The Ninth Circuit reads section 17(a)(1), section 10(b), and Rule 10b-5 as prohibiting fraudulent conduct or practices in connection with the offer or sale of securities. See SEC v. Dain Rauscher, Inc., 254 F.3d 852, 855 (9th Cir.

2001). "These antifraud provisions forbid making a material misstatement or omission in connection with the offer or sale of a security by means of interstate commerce." Id. at 855-56.

Violations of section 17(a)(1), section 10(b), and Rule 10b-5 require a showing of recklessness, which "is conduct that consists of a highly unreasonable act, or omission, that is an 'extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" SEC v. Dain Rauscher, Inc., 254 F.3d 852, 856 (9th Cir. 2001) (quoting Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1569 (9th Cir. 1990) (en banc)). Violations of sections 17(a)(2) and (3), on the other hand, require a showing of negligence. Dain Rauscher, Inc., 254 F.3d at 856.

The Second and Third Claims for Relief plead fraud with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure, especially when Zaucha fails to identify how any particular claim is insufficiently pled. The court is unpersuaded by Zaucha's argument that he was merely a "passive, non-participant." See ECF No. 97, PageID # 1079. To the contrary, the Complaint alleges that Zaucha was an active participant in the fraud.

Specifically, the Complaint alleges that, beginning in 2009, Left Behind issued Zaucha approximately 1.7 billion shares

of its common stock, in exchange for Zaucha's consulting
services.  Id. ¶¶ 3-4, 23-27, 37, PageID #s 2, 6-8, 9-10.
Zaucha's consulting service responsibilities arose pursuant to
consulting agreements between Left Behind and Zaucha.  These
agreements, however, did not specify his job duties.  Id. ¶ 28,
PageID # 8.  The Complaint alleges that Zaucha did little
consulting.  It alleges that he may have authored a script used
by Left Behind staff who called pastors from a free database
maintained by another entity.  Id. ¶ 32, PageID #s 8-9.  Zaucha
is also alleged to have run staff meetings and to have provided
informal counseling to employees, rather than the consultation
services contemplated by the plain language of the agreements.
Id.

         The Complaint alleges that, while Zaucha was a Left
Behind consultant, Left Behind was unprofitable and severely
undercapitalized.  Id. ¶ 4, PageID # 2.  The Complaint alleges
that the consulting agreements between Zaucha and Left Behind
were a "sham," whose true purpose was to enable Zaucha to sell
millions of unregistered shares of Left Behind common stock,
kicking back stock proceeds to Left Behind, which was in need of
funds.  Id. ¶¶ 36 and 55, PageID # 9 and 13.

         Supposedly at Lyndon's direction, Zaucha promptly
offered for sale and sold the stock he received under the
consulting agreement through six brokerage houses, reaping

approximately $4.6 million in sales proceeds.  Id. ¶ 48, PageID
# 12.  Zaucha then allegedly kicked back approximately $3.3
million of these proceeds to Left Behind.  Id. ¶ 4, PageID # 2.
Zaucha takes issue with the Complaint's allegations of "kick
backs," calling those references vague and conclusory.  See ECF
No. 97, PageID # 1080.  However, the Complaint details what it
means by "kick backs."  First, it alleges that Zaucha paid Left
Behind $871,169 in "early-sell fees."  See Complaint ¶¶ 5 and 97,
PageID #s 2 and 24.  Second, Zaucha supposedly kicked back money
to Left Behind through allegedly fake sales.  The Complaint
alleges that Zaucha's company, Lighthouse, purchased about $1.3
million of Left Behind's old inventory, but did not do so to sell
that inventory.  Instead, Lighthouse sold very little of the
inventory for a few thousand dollars and gave most of it away.
Id. ¶¶ 6 and 67-68, PageID # 2-3, and 15-16.  Third, Zaucha also
supposedly "kicked back" about $1 million to Left Behind in the
form of "loans" and "investments."  Id. ¶¶ 8 and 97, PageID #s 3
and 24.

        The Complaint further alleges that Zaucha knew that,
under SEC Rule 144, 17 C.F.R. § 230.144, the common stock he
received for his consulting services was restricted stock that
could not be sold within a six-month period.  Id. ¶ 40, PageID
# 10.  To get around this restriction, Lyndon allegedly sent
faxes to Left Behind's stock transfer agent, asking that "New

Restricted Stock Certificates" be issued to Zaucha with the following instruction, "Note, hold for 144 paperwork to remove legend." The faxes also backdated the beneficial ownership date to six months earlier. Id. ¶ 42, PageID # 10.

As noted earlier in this order, the "144 paperwork to remove legend" referred to opinion letters from Left Behind's attorney, which based its opinions on Zaucha's "Seller's Representation Letter" for a "non-affiliate." Zaucha supposedly further represented that his stock "has been owned and fully paid for . . . in excess of one (1) year." Id. ¶ 44, PageID # 11. Zaucha's representations were allegedly false, in that he was a Left Behind "affiliate" controlled by Lyndon. Id. ¶ 46, PageID # 11.

From November 2009 until June 2011, based on Zaucha's representations, Left Behind's attorney issued more than 20 opinion letters addressed to the transfer agent that "opined" that Zaucha's shares of Left Behind could be sold by Zaucha without registering them with the SEC in accordance with Rule 144. Id. ¶ 45, PageID # 11.

Based on these opinion letters, Left Behind's transfer agent removed the restrictive legends from the common stock and sent the stock to Zaucha's brokerage accounts, from which Zaucha sold the shares into the market. Id. ¶ 47, PageID # 11. As detailed in Paragraph 48 of the Complaint, between August 4,

2009, and October 10, 2011, Zaucha had accounts at six different brokerage firms that sold a total of more than 1.7 billion unregistered shares of Left Behind for more than $4.6 million. Id. ¶ 46, PageID # 12.

The Complaint also alleges that, in an attempt to conceal the true nature of his stock sales, which had the effect of making Left Behind appear more profitable, on or about July 29, 2011, Zaucha sent to its auditors a letter in which he knowingly or recklessly made various misrepresentations, which are detailed in the Complaint. Id. ¶¶ 72-74, PageID # 16-17. Using these representations, Left Behind allegedly issued false and misleading quarterly and annual statements for 2011. See id. ¶¶ 81-99.

To the extent Zaucha argues that the Complaint lacks factual assertions going to "scienter," the court disagrees with him. As set forth above, the Complaint alleges that Zaucha knew of the restriction on the sale of his securities and took affirmative steps to get the restriction removed. He also allegedly sent Left Behind's auditors false information to hide kick backs. These allegations are sufficient to allege intentional conduct by Zaucha.

Given these detailed allegations, the Complaint sufficiently alleges its fraud-based claims.

**IV.     CONCLUSION.**

For the reasons set forth above, the court denies Zaucha's motion to dismiss, ECF No. 97.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 13, 2014.



 /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge